# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 06 B 07722 |
| | ) | Chapter 7 |
| KATHY D. LINDEMANN, | ) | Judge John H. Squires |
| | ) | |
| Debtor. | ) | |
| | ) | |
| WILLIAM D. FIALA, | ) | Adversary No. 06 A 01661 |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KATHY D. LINDEMANN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION

This matter comes before the Court on the motion of Kathy D. Lindemann (the "Debtor") for summary judgment pursuant to Federal Rule of Bankruptcy Procedure 7056, which incorporates by reference Federal Rule of Civil Procedure 56, on the complaint filed by William D. Fiala (the "Plaintiff") which seeks to deny the Debtor a discharge pursuant to 11 U.S.C. § 727(a)(2)(A) and (B), (3), (4), and (5). For the reasons set forth herein, the Court grants the motion for summary judgment. The Debtor has offered sufficient evidence to negate an essential element of each statutory violation alleged in the Plaintiff's complaint. The trial set to commence on December 17, 2007 is stricken.

-2-

## I.  JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and

Internal Operating Procedure 15(a) of the United States District Court for the Northern

District of Illinois. This is a core proceeding under 28 U.S.C. § 157(b)(2)(J).

## II.  APPLICABLE STANDARDS FOR SUMMARY JUDGMENT

In order to prevail on a motion for summary judgment, the movant must meet the

statutory criteria set forth in Rule 56 of the Federal Rules of Civil Procedure, made

applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056.  Rule

56(c) reads in part:

> The judgment sought shall be rendered forthwith if the
> pleadings, depositions, answers to interrogatories, and
> admissions on file, together with the affidavits, if any, show
> that there is no genuine issue as to any material fact and that
> the moving party is entitled to a judgment as a matter of law.

FED. R. CIV. P. 56(c).  *See also Estate of Allen v. City of Rockford*, 349 F.3d 1015, 1019 (7th

Cir. 2003).

The primary purpose of granting a summary judgment motion is to avoid unnecessary

trials when there is no genuine issue of material fact in dispute. *Trautvetter v. Quick*, 916

F.2d 1140, 1147 (7th Cir. 1990); *Farries v. Stanadyne/Chi. Div.*, 832 F.2d 374, 378 (7th Cir.

1987) (*quoting Wainwright Bank & Trust Co. v. Railroadmen's Fed. Savs. & Loan Ass'n of

Indianapolis*, 806 F.2d 146, 149 (7th Cir. 1986)).  Where the material facts are not in dispute,

the sole issue is whether the moving party is entitled to a judgment as a matter of law.  *ANR*

-3-

*Advance Transp. Co. v. Int'l Bhd. of Teamsters, Local 710*, 153 F.3d 774, 777 (7th Cir. 1998).

On a motion for summary judgment, "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (internal quotation omitted). Summary judgment is the "put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (internal quotation omitted).

In 1986, the United States Supreme Court decided a trilogy of cases that encourages the use of summary judgment as a means to dispose of factually unsupported claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). The burden is on the moving party to show that no genuine issue of material fact is in dispute. *Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 322; *Matsushita*, 475 U.S. at 585-86.

All reasonable inferences drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Roger Whitmore's Auto. Servs., Inc. v. Lake County, Ill.*, 424 F.3d 659, 666-67 (7th Cir. 2005); *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998). The existence of a material factual dispute is sufficient only if the disputed fact is determinative of the outcome under applicable law. *Anderson*, 477 U.S. at 248; *Fritcher v. Health Care Serv. Corp.*, 301 F.3d 811, 815 (7th Cir. 2002). "'Factual disputes that are irrelevant or unnecessary will not be counted.'" *Fritcher*,

-4-

301 F.3d at 815 (*quoting Anderson*, 477 U.S. at 248). "[S]ummary judgment is not an appropriate occasion for weighing the evidence; rather, the inquiry is limited to determining if there is a genuine issue for trial." *Lohorn v. Michal*, 913 F.2d 327, 331 (7th Cir. 1990). The Seventh Circuit has noted that trial courts must remain sensitive to fact issues where they are actually demonstrated to warrant denial of summary judgment. *Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1065-66 (7th Cir. 2000); *Szymanski v. Rite-Way Lawn Maint. Co.*, 231 F.3d 360, 364 (7th Cir. 2000).

The "party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (*quoting* FED. R. CIV. P. 56(c)). Once the motion is supported by a prima facie showing that the moving party is entitled to judgment as a matter of law, a party opposing the motion may not rest upon the mere allegations or denials in its pleadings; rather, its response must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 323; *Matsushita*, 475 U.S. at 587; *Patrick v. Jasper County*, 901 F.2d 561, 565 (7th Cir. 1990). The manner in which this showing can be made depends upon which party will bear the burden of persuasion at trial.

If the burden of persuasion at trial would be on the non-moving party, the party moving for summary judgment may satisfy Rule 56's burden of production either by submitting affirmative evidence that negates an essential element of the non-moving party's claim or by demonstrating that the non-moving party's evidence is insufficient to establish

-5-

an essential element of the non-moving party's claim. *See Union Nat'l Bank of Marseilles v. Leigh (In re Leigh)*, 165 B.R. 203, 213 (Bankr. N.D. Ill. 1993). When a defendant moves for summary judgment, the plaintiff has the obligation to make out its prima facie case. *Fisher Inv. Capital, Inc. v. Cohen (In re Cohen)*, 334 B.R. 392, 397 (Bankr. N.D. Ill. 2005). The failure of the plaintiff to adduce evidence on each element of the claim results in the entry of summary judgment for the defendant. *Id.* (citing *Brummett v. Sinclair Broad. Group, Inc.*, 414 F.3d 686, 694 (7th Cir. 2005)).

Local Bankruptcy Rule 7056-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Northern District of Illinois, which deals with summary judgment motions, was modeled after LR56.1 of the Local Rules of the United States District Court for the Northern District of Illinois. Hence, the case law construing LR56.1 and its predecessor Local Rule 12 applies to Local Bankruptcy Rule 7056-1.

Pursuant to Local Bankruptcy Rule 7056, a motion for summary judgment imposes special procedural burdens on the parties. Specifically, the Rule requires the moving party to supplement its motion and supporting memorandum with a statement of undisputed material facts ("7056-1 statement"). The 7056-1 statement "shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph. Failure to submit such a statement constitutes grounds for denial of the motion." Local Bankr.R. 7056-1B.

The party opposing a summary judgment motion is required by Local Rule 7056-2 to respond ("7056-2 statement") to the movant's 7056-1 statement, paragraph by paragraph,

-6-

and to set forth any material facts that would require denial of summary judgment, specifically referring to the record for support of each denial of fact. Local Bankr.R. 7056-2. The opposing party is required to respond "to each numbered paragraph in the moving party's statement" and to make "specific references to the affidavits, parts of the record, and other supporting materials relied upon[.]" Local Bankr.R. 7056-2A(2)(a). Most importantly, "[a]ll material facts set forth in the [7056-1] statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." Local Bankr.R. 7056-2B.

In the instant matter, the Debtor filed a 7056-1 statement that complies with the Rule. It includes numbered paragraphs establishing undisputed facts with specific references to accompanying exhibits, including affidavits from the Debtor and Neal Hopkins, an accountant who prepared the Debtor's 2005 income tax return. (Exs. 5 & 6.) The Court ordered the Plaintiff to file a response to the motion for summary judgment and 7056-1 statement by August 10, 2007. The Plaintiff failed to file such a response. Debtor's counsel advised the Court that he agreed with Plaintiff's counsel to extend this deadline by a few days. After another week had passed, Plaintiff's counsel advised Debtor's counsel that she did not intend to file a response to the Debtor's motion for summary judgment. Thus, pursuant to Local Rule 7056-2B, the Plaintiff admits all material facts set forth in the Debtor's 7056-1 statement. Such facts are set forth below.

-7-

### III. <u>UNDISPUTED FACTS AND BACKGROUND</u>

The Debtor and the Plaintiff were friends for several years before June of 2005. (7056-1 Statement ¶ 3; Ex. 6, Aff. of Debtor ¶ 3.) In June of 2005, the Debtor asked the Plaintiff to enter into business with the Debtor. (7056-1 Statement ¶ 4; Ex. 6 ¶ 4.) The Debtor has no formal accounting or business training. (Ex. 6 ¶ 2.) She was, however, interested in starting a business called Aim Higher Organization which would assist individuals and businesses with organization. (*Id.* ¶ 4.) The Debtor provided the Plaintiff with a spreadsheet of proposed costs and expenses for the business. (7056-1 Statement ¶ 5; Ex. 1, Voluntary Disclosure, pp. 118-19; Ex. 6 ¶ 5.) The Plaintiff understood this spreadsheet to be an estimate of expenses for the business, not a binding plan of operation. (Ex. 4, Dep. of Plaintiff, p. 13.) The Plaintiff decided not to enter into business with the Debtor but the Plaintiff agreed to loan the Debtor $25,000 to start the business. (7056-1 Statement ¶ 6; Ex. 6 ¶ 7.) The Plaintiff and the Debtor signed a promissory note for the $25,000 loan on June 22, 2005, and the Debtor received the $25,000 at that time. (7056-1 Statement ¶ 7; Ex. 1, Part 3 p. 120.)

The promissory note provided for the Plaintiff to lend $25,000 to the Debtor for operation of Aim Higher Organization. (Ex. 1, Part 3 p. 120.) The note required the Debtor to make monthly payments starting on July 22, 2006. (*Id.*) The promissory note was the only agreement between the Plaintiff and the Debtor. (7056-1 Statement ¶ 8; Ex. 6 ¶ 9; Ex. 4, pp. 7-8.) The Plaintiff did not restrict the Debtor's use of the loan funds in any way. (*Id.*)

After receiving the funds, the Debtor registered the name Aim Higher Organization as an assumed business name and began operating as a sole proprietorship. (7056-1

-8-

Statement ¶ 9; Ex. 6 ¶ 10.)  The Debtor spent the loan funds on various expenses for the business, which the Debtor operated from her home. (7056-1 Statement ¶ 12; Ex. 6 ¶ 13.) For example, the Debtor arranged for the design of a website and mailed out about 5,000 postcards for advertising. (7056-1 Statement ¶ 10; Ex. 6 ¶ 11.) The website was operational for at least some period of time. (*Id.*) Moreover, the Debtor solicited customers at their places of business using her personal vehicle. (7056-1 Statement ¶ 12; Ex. 6 ¶ 13.) She also used one phone account for personal and business needs, including her fax line. (7056-1 Statement ¶ 25; Ex. 6 ¶ 24.)

After the Debtor began operating her business, she ended her previous employment with Industrial Fasteners. (7056-1 Statement ¶¶ 13 & 14; Ex. 6 ¶¶ 14 & 15.) The Debtor used some of the loan funds to pay personal expenses such as food, housing, personal telephone, and other living expenses. (7056-1 Statement ¶ 20; Ex. 6 ¶ 20.) The Debtor paid these personal expenses by taking a salary for herself from Aim Higher Organization. (Ex. 2, Part 1, Response to Document Production, pp. 6, 14, 17, 19, 23.)

Aim Higher Organization was unsuccessful and never had any customers. (Ex. 4, p. 48; 7056-1 Statement ¶ 62.) The Debtor ceased operating the business in January or February of 2006, and she has remained unemployed since that time. (7056-1 Statement ¶ 27; Ex. 6 ¶ 26.) On June 30, 2006, the Debtor filed her Chapter 7 petition for bankruptcy relief, listing the Plaintiff as a creditor on her schedules. (Compl. ¶ 6; Answer ¶ 6.) The Debtor did not pay the Plaintiff any of the amounts due on the loan. (Compl. ¶ 8; Answer ¶ 8.)

-9-

On October 24, 2006, the Plaintiff filed this adversary proceeding. The Plaintiff alleges that the Debtor should not be granted a discharge under 11 U.S.C. § 727(a)(2)(A) and (B), (3), (4), and (5). Specifically, the Plaintiff alleges that the Debtor engaged in the following behavior: (1) knowingly failed to disclose on Schedules B and I of her bankruptcy petition $13,750 of salary the Debtor earned from her business; (2) knowingly misrepresented her business expenses such as $4,500 spent for a website, $13,750 spent on her salary, $1,500 spent on postage, $1,365.75 spent on phone, and others because the Debtor failed to produce to the Plaintiff proof of these expenses; (3) stated upon examination that she conducted no business and had no paying accounts for Aim Higher Organization; (4) failed to disclose information with intent to hinder, delay, and/or defraud the Plaintiff or the trustee; (5) provided either inaccurate schedules or inaccurate testimony; (6) concealed, falsified, or failed to keep or preserve financial records; and (7) engaged in a pattern of behavior of not complying with obligations owed to the trustee and creditors regarding disclosure of information and documentation.

The Plaintiff clarified some of his allegations in his deposition and answers to interrogatories. He stated that on the Debtor's tax return, she listed $30,800 of equipment for a depreciation deduction. (Ex. 4 pp. 31-32.) The Debtor did not, however, list $30,800 of assets on her bankruptcy schedules. (*Id.*) Because the assets were listed on the Debtor's tax return but not on her schedules, the Plaintiff assumed the Debtor acted intentionally in omitting this information. (7056-1 Statement ¶ 57; Ex. 4 p. 35.) The Plaintiff knew of no other facts to prove that the Debtor intentionally omitted this information. (*Id.*) The Plaintiff also alleged that the Debtor failed to disclose on her bankruptcy schedules as income the

-10-

$13,000 in salary she received from her business. (Ex. 4 pp. 34-35.) As to the Debtor's

business expenses, the Plaintiff admitted that the expenses for the website were not

fraudulent but stated that some phone bills and postal receipts were missing from the

Debtor's records. (Ex. 4, pp. 25-26.) Finally, the Plaintiff stated that the Debtor's

accounting of her business expenses to the case trustee was incomplete. (Ex. 7, Amended

Answers to Interrogatories ¶ 4.) Furthermore, the Plaintiff asserted that when additional

information was requested, the Debtor refused to respond. (*Id.*)

On June 28, 2007, the Debtor filed the instant motion for summary judgment. The

Debtor denied any wrongdoing in connection with her business in her affidavit, attached to

her motion. The Debtor attested that she fully disclosed all of her assets and liabilities on her

bankruptcy schedules. (7056-1 Statement ¶ 29; Ex. 6 ¶ 28.) Moreover, the Debtor stated she

did not conceal, transfer, mutilate, remove, or destroy any assets in an effort to hinder, delay,

or defraud creditors at any time. (7056-1 Statement ¶ 30; Ex. 6 ¶ 29.) The Debtor averred

that she never received anything of value in exchange for acting or not acting in connection

with her bankruptcy case. (Ex. 6 ¶ 27.) The Debtor also stated the trustee never requested

additional information from her. (7056-1 Statement ¶ 31; Ex. 6 ¶ 30.) Finally, the Debtor

attested that the information she voluntarily disclosed to the Plaintiff contained all of the

receipts she had concerning her business expenses. (7056-1 Statement ¶ 23; Ex. 6 ¶ 22.)

The Debtor also attached another affidavit as well as documentary evidence to rebut

the Plaintiff's allegations. First, to explain her salary and asset omissions, the Debtor

included an affidavit from her accountant, Neal Hopkins. The Debtor filed a tax return for

2005, prepared by Hopkins. (7056-1 Statement ¶ 16; Ex. 6 ¶ 17.) As the complaint alleges,

-11-

the Debtor did not include her salary from Aim Higher Organization in her 2005 income tax

return. (Ex. 1, Part 1, Voluntary Disclosure, pp. 1-5.) In his affidavit, Hopkins explained

that the funds the Debtor borrowed from the Plaintiff and used for the Debtor's personal

expenses do not constitute income, even though the Debtor paid herself the funds through

a sole proprietorship. (Ex. 5, Aff. of Neal Hopkins ¶ 9.) Hopkins elaborated that these funds

are not reportable or taxable income in accordance with the general standards of

accountancy. (Ex. 5 ¶¶ 9 & 11.) By failing to respond to the Debtor's 7056-1 statement, the

Plaintiff admitted that the borrowed funds were not income despite the Debtor's personal use

of such funds. (7056-1 Statement ¶ 21.)

Hopkins further described the $30,800 worth of assets listed on the Debtor's tax

return for a depreciation deduction. These assets included the Debtor's vehicle, which she

used for the business, as well as the Debtor's business equipment. (Ex. 5 ¶¶ 6 & 7.) Hopkins

stated that the cost basis of these assets, as listed on the tax return, does not reflect the value

of the assets at a later time. (Ex. 5 ¶ 8.) The Plaintiff admitted that the cost basis of the

depreciated assets on the Debtor's tax return was not the value of those items in 2005.

(7056-1 Statement ¶ 18.)

Next, the Debtor attached documents she disclosed to the Plaintiff voluntarily and

through discovery. (Ex. 1; Ex. 2; Joint Pretrial Memorandum ¶ 9.) These documents

included website expenses, insurance bills, phone bills, and advertising material invoices.

(Ex. 1, Part 2 pp. 56-57, pp. 74-75, pp. 77-86, pp. 94-99, Part 3, pp. 109-111.) The

documents also included copies of checks, the Debtor's personal and business bank account

statements, receipts for office supplies, and an invoice for professional organization

-12-

membership dues. (Ex. 1, Part 1 pp. 9-47, Part 3 pp. 103-108; Ex 2, Part 1 pp. 5-23, p. 24, pp. 27-51, Part 2, pp. 52-102.) Finally, the Debtor provided the Plaintiff with a spreadsheet detailing all of the Debtor's expenses. (Ex. 9.)

## IV. <u>DISCUSSION</u>

The complaint alleges the Debtor should be denied a discharge on the basis of § 727(a)(2)(A) and (B), (3), (4), and (5). The Court concludes that the Debtor has offered sufficient evidence to disprove an essential element of each of these claims. As a result, the Court grants the Debtor's motion for summary judgment.

### A.      <u>Standards for Objections to Discharge</u>

The discharge provided by the Bankruptcy Code is meant to effectuate the "fresh start" goal of bankruptcy relief. *Vill. of San Jose v. McWilliams*, 284 F.3d 785, 790 (7th Cir. 2002). In exchange for that fresh start, the Bankruptcy Code requires debtors to accurately and truthfully present themselves before the court. *Stathopoulos v. Bostrom (In re Bostrom)*, 286 B.R. 352, 359 (Bankr. N.D. Ill. 2002), *aff'd*, No. 02 C 9451, 2003 WL 403138 (N.D. Ill. Feb. 20, 2003). Indeed, a discharge is only for the honest debtor. *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991); *McWilliams*, 284 F.3d at 790; *In re Juzwiak*, 89 F.3d 424, 427 (7th Cir. 1996); *In re Garman*, 643 F.2d 1252, 1257 (7th Cir. 1980). "The denial of discharge is a harsh result." *Henbest v. Meyer (In re Meyer)*, 307 B.R. 87, 91 (Bankr. N.D. Ill. 2004). Because the denial of a discharge is so drastic a remedy, courts may be more reluctant to impose it than to find a particular debt non-dischargeable. *See Soft Sheen Prods., Inc. v.*

-13-

*Johnson (In re Johnson)*, 98 B.R. 359, 367 (Bankr. N.D. Ill. 1988) ("The denial of discharge is a harsh remedy to be reserved for a truly pernicious debtor.").

The party objecting to a debtor's discharge has the burden of proving the objection. FED. R. BANKR. P. 4005; *In re Martin*, 698 F.2d 883, 887 (7th Cir. 1983) (noting that "the *ultimate* burden of proof in a proceeding objecting to a discharge lies with the plaintiff"). Objections to discharge under 11 U.S.C. § 727 should be liberally construed in favor of debtors and strictly against objectors in order to grant debtors a fresh start. *Juzwiak*, 89 F.3d at 427. The objector must establish all required elements of the objection by a preponderance of the evidence. *In re Scott*, 172 F.3d 959, 966-67 (7th Cir. 1999).

**B.    11 U.S.C. § 727(a)(2)(A) and (B)**

Section 727(a) of the Bankruptcy Code denies a discharge to debtors who have been unscrupulous in different ways. *Cohen v. Olbur (In re Olbur)*, 314 B.R. 732, 740 (Bankr. N.D. Ill. 2004). Section 727(a)(2)(A) and (B) provide as follows:

> (a) The court shall grant the debtor a discharge, unless–
>> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed–
>>> (A) property of the debtor, within one year before the date of the filing of the petition; or
>>> (B) property of the estate, after the date of the filing of the petition[.]

11 U.S.C. § 727(a)(2)(A) and (B).

-14-

Under § 727(a)(2)(A), an objection to discharge will be sustained if the objecting party alleges and proves the following elements: (1) the debtor transferred, removed, destroyed, mutilated, or concealed property; (2) belonging to the estate; (3) within one year of filing the petition; and (4) with the intent to hinder, delay, or defraud a creditor of the estate. *In re Kontrick*, 295 F.3d 724, 736 (7th Cir. 2002), *aff'd*, 540 U.S. 443 (2004); *Saluja v. Mantra (In re Mantra)*, 314 B.R. 723, 729 (Bankr. N.D. Ill. 2004); *Clean Cut Tree Serv., Inc. v. Costello (In re Costello)*, 299 B.R. 882, 894 (Bankr. N.D. Ill. 2003). An exception to discharge pursuant to § 727(a)(2)(A) "'essentially consists of two components: an act (i.e., a transfer or a concealment of property) and an improper intent (i.e., a subjective intent to hinder, delay, or defraud a creditor.'" *Kontrick*, 295 F.3d at 736 (quoting *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir. 1993)); *see also Jeffrey M. Goldberg & Assocs., Ltd. v. Holstein (In re Holstein)*, 299 B.R. 211, 226-27 (Bankr. N.D. Ill. 2003), *aff'd*, No. 03 C 8023, 2004 WL 2075442 (N.D. Ill. Aug. 31, 2004). Both elements must have been present during the year before bankruptcy; anything occurring earlier is "forgiven." *Kontrick*, 295 F.3d at 736.

A concealment for purposes of § 727(a)(2) consists of "failing or refusing to divulge information to which creditors were entitled." *Holstein*, 299 B.R. at 229 (internal quotation omitted); *see also Scott*, 172 F.3d at 967 (stating that concealment includes "preventing discovery" or "fraudulently transferring or withholding knowledge or information required by law to be made known"). A concealment will be found when a debtor purports to transfer an asset, making it appear as if she no longer owns it, but she in fact retains an interest in the asset. *McWilliams*, 284 F.3d at 794; *Holstein*, 299 B.R. at 229.

-15-

In this case, the Plaintiff first alleges the Debtor violated this section by failing to disclose on her bankruptcy schedules and her income tax return her salary from the Aim Higher Organization. Next, the Plaintiff alleges that the Debtor listed $30,800 of assets on her income tax return that she did not list on her bankruptcy schedules. The Debtor has provided proof to the Court, however, that she did not fail to disclose the salary on her income tax return or the assets on her bankruptcy schedules. The Debtor operated the Aim Higher Organization as a sole proprietorship. (Ex. 1, Part 3 pp. 101, 102; Ex. 6 ¶ 10) The affidavit of Neal Hopkins, the Debtor's accountant, stated that the loan funds, which the Debtor used to pay herself a salary, were not taxable income that the Debtor needed to report on her income tax return. (Ex. 5 ¶ 9.) In fact, Hopkins stated that these borrowed funds were not income at all, even if paid through a sole proprietorship. (*Id.*) The Plaintiff produced no evidence to rebut Hopkins' statements. In fact, the Plaintiff admitted, by failing to respond to the Debtor's 7056-1 statement, that the Debtor's personal use of the borrowed funds was not income. (7056-1 Statement ¶ 21.) Furthermore, the Plaintiff stated in his deposition that he did not restrict the Debtor's use of the borrowed funds in any way. (Ex. 4 pp. 7-8.) As a result, the Court finds that the Debtor did not conceal information concerning her salary.

Next, the Plaintiff contends that the Debtor failed to disclose $30,800 worth of assets on her schedules. The Plaintiff argues that the Debtor listed $30,800 in assets for a depreciation deduction on her tax return. Hopkins' affidavit explained this discrepancy as well. Hopkins stated that $17,000 of those assets consisted of the Debtor's car and the other $13,000 consisted of her office equipment and home furnishings, because she operated the business from her home. (Ex.5 ¶¶ 6 & 7.) According to Hopkins, the cost basis of $13,000

-16-

used on the Debtor's tax return does not reflect the value of such assets at a later time. (*Id.* ¶ 8.) Therefore, at the time the Debtor filed her petition, these assets had a different value. The Plaintiff admitted that the cost basis of the depreciated assets was not the value of those items in 2005. (7056-1 Statement ¶ 18.) Finally, the Plaintiff admitted that the Debtor fully disclosed all of her assets in her bankruptcy schedules and that she did not conceal, transfer, mutilate, remove, or destroy any assets in an effort to hinder, delay, or defraud creditors at any time. (7056-1 Statement ¶¶ 29 & 30.) Thus, the Court finds the Debtor did not conceal assets or information concerning her assets.

Next, the Court must determine whether the Debtor had the requisite fraudulent intent under § 727(a)(2). The issue of a debtor's intent is a question of fact to be determined by the bankruptcy judge. *In re Smiley*, 864 F.2d 562, 566 (7th Cir. 1989). Denial of discharge under this section requires proof of actual intent to hinder, delay, or defraud a creditor. *McWilliams*, 284 F.3d at 790; *In re Snyder*, 152 F.3d 596, 601 (7th Cir. 1998); *In re Krehl*, 86 F.3d 737, 743 (7th Cir. 1996); *Smiley*, 864 F.2d at 566. Because debtors rarely admit their intent was fraudulent, actual intent to hinder, delay, or defraud may be proven by circumstantial evidence or by inference drawn from a debtor's course of conduct. *McWilliams*, 284 F.3d at 791; *Snyder*, 152 F.3d at 601; *Krehl*, 86 F.3d at 743; *Smiley*, 864 F.2d at 566. Courts are reluctant to accept a debtor's self-serving statement of her intent as the best evidence of that intent. *Costello*, 299 B.R. at 895.

"In determining whether a debtor has acted with intent to defraud under § 727, the court should consider the debtor's 'whole pattern of conduct.'" *Bennett & Kahnweiler Assocs. v. Ratner (In re Ratner)*, 132 B.R. 728, 731 (N.D. Ill. 1991) (*quoting First Tex. Savs.*

-17-

*Assoc., Inc. v. Reed (In re Reed)*, 700 F.2d 986, 991 (5th Cir. 1983)); *see also Costello*, 299

B.R. at 895 (noting that courts can deduce fraudulent intent by examining the totality of facts

and circumstances surrounding the transaction). The Seventh Circuit has adopted several

factors which, if shown, indicate actual fraud: (1) the lack or inadequacy of consideration;

(2) the family, friendship or close associate relationship between the parties; (3) the retention

of possession, benefit, or use of the property at issue; (4) the financial condition of the

debtor; (5) the existence or cumulative effect of the pattern or series of transactions or course

of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of

suits by creditors; and (6) the chronology of the events and transactions under inquiry.

*McWilliams*, 284 F.3d at 791.  "The retention of the use of transferred property very strongly

indicates a fraudulent motive underlying the transfer." *Costello*, 299 B.R. at 895-96

(quotation omitted).  "Proof of harm is not a required element of a cause of action under

Section 727." *Smiley*, 864 F.2d at 569; *see also Snyder*, 152 F.3d at 601; *Krehl*, 86 F.3d at

744 n.4.

      In this case, the Plaintiff acknowledged in his deposition that the only evidence he

had that the Debtor acted with fraudulent intent in omitting the salary and assets was the

discrepancy itself between the Debtor's tax return and her schedules.  (Ex. 4 p. 35 lines 5-

22.)  Because the Debtor has explained this discrepancy with her accountant's affidavit, the

Court will not infer a fraudulent intent from the circumstances.  In addition, the Debtor

denied concealing or transferring any assets with intent to defraud creditors.  (Ex. 6 ¶ 29.)

Although a debtor's self-serving denial of fraudulent intent is generally not the best evidence,

in this case, the Debtor's denial is uncontroverted.  (7056-1 Statement ¶ 30.)  Thus, the Court

-18-

finds the Debtor did not have fraudulent intent in omitting her salary from Aim Higher

Organization on her schedules and tax return or in listing less than $30,800 worth of assets

on her schedules.  The Court concludes the Debtor will not be denied a discharge under §

727(a)(2)(A) and (B).

**C.      11 U.S.C. § 727(a)(3)**

Section 727(a)(3) bars a debtor's discharge for the failure to keep financial records

and provides that:

> (a) The court shall grant the debtor a discharge, unless–
>
> > (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]

11 U.S.C. § 727(a)(3).

"The purpose of § 727(a)(3) is to make the privilege of discharge dependent on a true

presentation of the debtor's financial affairs." *Scott*, 172 F.3d at 969 (internal quotations

omitted).  While this provision was not meant to bar the discharge of the ordinary consumer

debtor, *see id.* 172 F.3d at 970, a "sudden and large dissipation of assets," coupled with a

lack of books and records will provide a basis for denial of a discharge under this section.

*PNC Bank, Nat'l Assoc. v. Buzzelli (In re Buzzelli)*, 246 B.R. 75, 98 (Bankr. W.D. Pa. 2000).

"Section 727(a)(3) requires as a precondition to discharge that debtors produce

records which provide creditors 'with enough information to ascertain the debtor's financial

-19-

condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present.'" *Juzwiak*, 89 F.2d at 427 (*quoting Bay State Milling Co. v. Martin (In re Martin)*, 141 B.R. 986, 995 (Bankr. N.D. Ill. 1992)); *see also Union Planters Bank, N.A. v. Connors*, 283 F.3d 896, 899 (7th Cir. 2002). This statute "ensures that trustees and creditors will receive sufficient information to enable them to 'trace the debtor's financial history; to ascertain the debtor's financial condition; and to reconstruct the debtor's financial transactions.'" *Juzwiak*, 89 F.3d at 427-28 (*quoting Martin*, 141 B.R. at 995).

"Section 727(a)(3) does not require proof of criminal or quasi-criminal conduct; rather, a transfer or removal of assets, a destruction or other wasting of assets, or a concealment of assets is all the trustee must prove." *Scott*, 172 F.3d at 969. Intent is not an element of proof under § 727(a)(3). *Connors*, 283 F.3d at 901; *Scott*, 172 F.3d at 969; *Juzwiak*, 89 F.3d at 430.

The statute places an affirmative duty on the debtor to create books and records accurately documenting her financial affairs. *Juzwiak*, 89 F.3d at 429 ("The debtor has the duty to maintain and retain comprehensible records."). Creditors are not required to accept a debtor's oral recitations or recollections of his transactions; rather, to qualify for a discharge in bankruptcy, a debtor is required to keep and produce written documentation of all such transactions. *See id.* 89 F.3d at 429-30. The text of § 727(a)(3) does not merely require that the debtor not lose any records; it mandates a denial of discharge for the "failure to act," unless such failure to act is justifiable. *Scott*, 172 F.3d at 969; *John Deere Co. v. Broholm (In re Broholm)*, 310 B.R. 864, 879 (Bankr. N.D. Ill. 2004); *Costello*, 299 B.R. at 897.

-20-

A creditor has the initial burden of proving that the debtor failed to keep adequate records. *Costello*, 299 B.R. at 897; *Martin*, 141 B.R. at 995; *Calisoff v. Calisoff (In re Calisoff)*, 92 B.R. 346, 356 (Bankr. N.D. Ill. 1988). "Records are not 'adequate' if they do not provide the trustee or creditors with enough information to ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present." *Martin*, 141 B.R. at 995. Every debtor has a duty to take reasonable precautions to maintain and preserve records of their financial transactions and affairs. *Brandt v. Carlson (In re Carlson)*, 231 B.R. 640, 654 (Bankr. N.D. Ill. 1999), *aff'd*, 250 BR. 366 (N.D. Ill. 2000), *aff'd*, 263 F.3d 748 (7th Cir. 2001).

The completeness and accuracy of a debtor's records are to be determined on a case-by-case basis, considering the size and complexity of the debtor's financial situation. *Cmty. Bank of Homewood-Flossmoor v. Bailey (In re Bailey)*, 145 B.R. 919, 924 (Bankr. N.D. Ill. 1992). Courts should consider the sophistication of the debtor, her educational background, her business experience and acumen, and her personal financial structure. *Costello*, 299 B.R. at 897; *Calisoff*, 92 B.R. at 356. Neither the court nor the creditors are required to reconstruct a debtor's financial picture by "sifting through a morass of checks and bank statements." *Connors*, 283 F.3d at 899. Rather, it is the debtor's duty to maintain and provide the court and the creditors with organized records of her financial affairs. *Id.*; *Juzwiak*, 89 F.3d at 429. Courts have broad discretion in deciding whether the books and records of a debtor are sufficient under § 727(a)(3). *Costello*, 299 B.R. at 897.

In this case, the Plaintiff alleges that the Debtor misrepresented her business expenses because she has failed to provide the Plaintiff with adequate documentation of her expenses

-21-

for her website, postage, salary, and other expenses.  After receiving documents from the

Debtor in discovery, the Plaintiff admitted in his deposition that the Debtor did not

misrepresent her payments for the website. (Ex. 4 p. 25.) The Plaintiff continued to assert,

however, that the Debtor failed to produce some phone bills as well as receipts from the post

office for advertisements she mailed out. (Ex. 4 p. 26.) The Debtor has no formal education

beyond high school. (Ex. 6, ¶ 2.) She has no accounting or business education or training.

(*Id.*) Despite these facts, the Debtor's records accounted for at least $8,250 of the $25,000

loan funds as the Debtor's salary when she was dedicating herself full-time to the business.

(Ex. 1, Part 1 pp. 6, 14, 17, 19, 23.) According to the Debtor, her salary was over $13,000.

(Ex. 9.)  Moreover, the Debtor documented another $4,500 for website design and

documented recurring charges such as phone and internet bills, professional membership

dues, insurance, advertising materials, and yellow pages advertisements. (Ex. 1, Part 2 pp.

56-73, 74-75, 77-86, 87-93, 94-99, Part 3 pp. 109-111, 112-115; Ex. 2, Part 1 p. 24.) The

Debtor provided to the Plaintiff all the receipts she retained that reflected business expenses.

(7056-1 Statement ¶ 23; Ex. 6 ¶ 22.) While the Debtor has not produced receipts for postage,

she attested that she purchased postage and mailed out approximately 5,000 post cards for

advertising. (7056-1 Statement ¶ 10; Ex. 6 ¶ 11.) Thus, the Debtor did not misrepresent or

falsify postage expenses. Given these facts, the Court does not find the Debtor's failure to

document every penny to the satisfaction of the Plaintiff justifies the drastic remedy of

denying the Debtor a discharge. The Debtor has provided the Plaintiff with documentation

regarding substantially all of her expenses. Thus, the Court finds the Debtor did not violate

§ 727(a)(3).

-22-

**D.    11 U.S.C. § 727(a)(4)(A)**

Section 727(a)(4) bars a debtor's discharge if she knowingly and fraudulently makes

a false oath in connection with the case. Specifically, § 727(a)(4) provides as follows:

> (a) The court shall grant the debtor a discharge, unless–
>> (4) the debtor knowingly and fraudulently, in
>> or in connection with the case–
>>> (A) made a false oath or
>>> account[.]

11 U.S.C. § 727(a)(4)(A).

The purpose of § 727(a)(4) is to enforce a debtor's duty of disclosure and to ensure

that the debtor provides reliable information to those who have an interest in the

administration of the estate. *Costello*, 299 B.R. at 899; *Bostrom*, 286 B.R. at 359; *Carlson*,

231 B.R. at 655; *Bensenville Cmty. Ctr. Union v. Bailey (In re Bailey)*, 147 B.R. 157, 163

(Bankr. N.D.Ill. 1992). The trustee and the creditors have a right to information that will

allow them to evaluate the case and administer the estate's property. *Costello*, 299 B.R. at

899. Thus, "[c]omplete financial disclosure is a condition precedent to the privilege of

discharge." *Glucona Am., Inc. v. Ardisson (In re Ardisson)*, 272 B.R. 346, 359 (Bankr. N.D.

Ill. 2001); *see also Fosco v. Fosco (In re Fosco)*, 289 B.R. 78, 93 (Bankr. N.D. Ill. 2002).

In order to prevail, a creditor must establish five elements under § 727(a)(4)(A): (1)

the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the

statement was false; (4) the debtor made the statement with the intent to deceive; and (5) the

statement related materially to the bankruptcy case. *Olbur*, 314 B.R. at 745; *Costello*, 299

-23-

B.R. at 899; *Urological Group, Ltd. v. Petersen (In re Petersen)*, 296 B.R. 766, 790 (Bankr. C.D. Ill. 2003); *Fosco*, 289 B.R. at 93; *Bostrom*, 286 B.R. at 359; *Bailey*, 147 B.R. at 162.

Turning to the matter at bar, the Plaintiff first must establish that the Debtor made a statement under oath. A debtor's petition, schedules, statement of financial affairs, statements made at an 11 U.S.C. § 341 meeting, and answers to interrogatories all constitute statements under oath for purposes of § 727(a)(4). *Broholm*, 310 B.R. at 880; *Costello*, 299 B.R. at 899; *Bostrom*, 286 B.R. at 360; *Neugebauer v. Senese (In re Senese)*, 245 B.R. 565, 574 (Bankr. N.D. Ill. 2000); *In re Korte*, 262 B.R. 464, 474 (B.A.P. 8th Cir. 2001). Thus, the Court finds that the Debtor's Schedules, Statement of Financial Affairs, testimony at the § 341 meeting, and answers to interrogatories constitute statements made under oath. Hence, there is no dispute that this element has been met.

Second, the Plaintiff must show that the Debtor's statements were false. Whether a debtor made a false oath within the meaning of § 727(a)(4)(A) is a question of fact. *Costello*, 299 B.R. at 899; *Holstein*, 272 B.R. at 477. A false oath may include a knowing and fraudulent omission. *Rafool v. Wilson (In re Wilson)*, 290 B.R. 333, 337 (Bankr. C.D. Ill. 2002); *Britton Motor Serv., Inc. v. Krich (In re Krich)*, 97 B.R. 919, 923 (Bankr. N.D. Ill. 1988) ("Filing of false schedules with material omissions or misrepresentations with an intent to mislead creditors and the trustee as to a debtor's actual financial condition constitutes a false oath under section 727(a)(4)(A)."). It is a debtor's role to carefully consider the questions posed and answer them accurately and completely. *Armstrong v. Lunday (In re Lunday)*, 100 B.R. 502, 508 (Bankr. D. N.D. 1989).

-24-

Here, the Plaintiff alleges that the Debtor made false statements by not disclosing her income and assets on her schedules as well as by not documenting her business expenses. As the Court has indicated above, the Debtor did not make a false representation regarding her income or assets. The Plaintiff admitted that the Debtor had fully disclosed all of her assets and liabilities in her bankruptcy schedules. (7056-1 Statement ¶ 23.) Moreover, the Debtor substantially documented her business expenses and did not falsify any expenses. (7056-1 Statement ¶¶ 23 & 30.)

The Plaintiff also alleges that the Debtor stated upon examination by the trustee that she conducted no business and had no paying accounts for the Aim Higher Organization. During the Plaintiff's deposition, however, the Plaintiff admitted that it was true that the Aim Higher Organization never conducted business. (Ex. 4 p. 48; 7056-1 Statement ¶ 62.) Therefore, the Court finds the Debtor did not make a false statement.

Third, the Plaintiff must establish that the Debtor knowingly made a false statement or omission. In this case, because the Court finds the Debtor did not make a false statement, the Court finds that the Debtor did not knowingly make any false statements.

Fourth, the Plaintiff must prove that the Debtor made a false statement with fraudulent intent. "Intent to defraud involves a material representation that you know to be false, or, what amounts to the same thing, an omission that you know will create an erroneous impression." *In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998). To find the requisite degree of fraudulent intent, a court must find that the debtor knowingly intended to defraud or engaged in behavior that displayed a reckless disregard for the truth. *In re*

CaseLine

-25-

*Yonikus*, 974 F.2d 901, 905 (7th Cir. 1992); *Bailey*, 147 B.R. at 164-65 (*citing Yonikus*). As

with § 727(a)(2)(A), direct evidence of intent to defraud may not be available. *Costello*, 299

B.R. at 900. Thus, the requisite intent under § 727(a)(4)(A) may be inferred from

circumstantial evidence or by inference based on a course of conduct. *See Yonikus*, 974 F.2d

at 905; *Carlson*, 231 B.R. at 655; *Costello*, 299 B.R. at 900. Reckless disregard means "not

caring whether some representation is true or false. . . ." *Chavin*, 150 F.3d at 728. If a

debtor's bankruptcy schedules reflect a "reckless indifference to the truth" then the plaintiff

seeking denial of the discharge need not offer any further evidence of fraud. *Costello*, 299

B.R. at 900; *Calisoff*, 92 B.R. at 355.

In this case, the Plaintiff has failed to establish that the Debtor has made a false

statement with fraudulent intent. As the Debtor's accountant explained, the Debtor's salary

from Aim Higher Organization was not in fact income and the cost basis of the Debtor's

assets does not reflect their value at a later date. (Ex. 5 ¶¶ 8 & 9.) The Plaintiff also

admitted that the Debtor's statement that she never conducted business was not false. (Ex.

4, p. 48.) Thus, because the Plaintiff has failed to establish that the Debtor made a false

statement, the Plaintiff cannot establish the Debtor had fraudulent intent.

Finally, the Plaintiff must show that a false statement related materially to the

bankruptcy case. A debtor's false oath must relate to a material matter before it will bar a

discharge in bankruptcy. *In re Agnew*, 818 F.2d 1284, 1290 (7th Cir. 1987). "[T]he test for

materiality of the subject matter of a false oath is whether it 'bears a relationship to the

bankrupt's business transactions or estate, or concerns the discovery of assets, business

dealings, or the existence and disposition of his property.'" *Bailey*, 147 B.R. at 162 (*quoting*

-26-

*In re Chalik*, 748 F.2d 616, 618 (11th Cir. 1984)); *see also Wilson*, 290 B.R. at 337; *Holstein*,

272 B.R. at 477.  A false oath may be material even though it does not result in any detriment

or prejudice to the creditor.  *Richardson v. Von Behren (In re Von Behren)*, 314 B.R. 169,

180 (Bankr. C.D. Ill. 2004).

Here, the Plaintiff has not proved that the Debtor made a false oath, so the Plaintiff

cannot prove a false oath materially related to the bankruptcy case.  The Court finds that §

727(a)(4)(A) does not provide a basis for denying the Debtor a discharge.

**E.   11 U.S.C. § 727(a)(4)(C)**

Section 727(a)(4)(C) provides as follows:

> (a) The court shall grant the debtor a discharge, unless–
> (4) The debtor knowingly and fraudulently, in
> or in connection with a case–
>> (C) gave, offered, received, or
>> attempted to obtain money,
>> property, or a dvantage, or a
>> promise of money, property, or
>> advantage, for acting or
>> forbearing to act[.]

11 U.S.C. § 727(a)(4)(C).  This section addresses any attempted or actual extortion or bribery

in connection with a bankruptcy case.  6 ALAN N. RESNICK & HENRY J. SOMMER, COLLIER

ON BANKRUPTCY ¶ 727.06, at 727-46 (15th ed. rev. 2007).  To prevent the debtor's discharge

under § 727(a)(4)(C) a creditor must prove two elements: "(1) knowledge and a fraudulent

intent on the part of the debtor; and (2) receipt of, or an attempt to obtain, or the giving or

offering of, money, property, or advantage, or a promise of these, for a purpose, namely,

action or forbearance in the case in which the offender is a debtor." *Id.*

-27-

In this case, the Plaintiff's complaint and interrogatories do not set forth any specific allegations or explain how the Debtor engaged in extortion or bribery. The Debtor, however, stated that she has never received anything of value in exchange for acting or not acting in connection with her bankruptcy case. (Ex. 6 ¶ 27.) The Court has deemed this fact admitted by the Plaintiff. (7056-1 Statement ¶ 28.) Thus, the Court finds the Debtor did not violate § 727(a)(4)(C).

**F.     11 U.S.C. § 727(a)(4)(D)**

Section 727(a)(4)(D) provides as follows:

> (a) The court shall grant the debtor a discharge, unless–
>> (4) The debtor knowingly and fraudulently, in or in connection with the case–
>>> (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs[.]

11 U.S.C. § 727(a)(4)(D).

Trustees lack the time and resources to play detective and uncover all assets and transactions of debtors. *Martin*, 141 B.R. at 997-98; *Morton v. Dreyer (In re Dreyer)*, 127 B.R. 587, 595 (Bankr. N.D. Tex. 1991). "[D]ebtors in bankruptcy have an affirmative duty to surrender to the Trustee . . . all recorded information relating to property of estate, and are also obligated to cooperate by providing the Trustee . . . with all relevant documents and papers and fully answering the questions in the petition for relief and attached schedules." *Martin*, 141 B.R. at 998. Section 727(a)(4)(D) enforces this duty by denying discharge to

-28-

debtors who intentionally withhold records, books, documents, or other papers relating to their property or financial affairs. *Id.* "The requisite intent to act knowingly and fraudulently 'may be established by circumstantial evidence, or by inference drawn from a course of conduct.'" *Id.* (*quoting Nassau Savs. & Loan Ass'n v. Trinsey (In re Trinsey)*, 114 B.R. 86, 92 (Bankr. E.D. Pa. 1990)).

The Plaintiff alleges that the Debtor has not complied with obligations owed to the trustee and creditors regarding disclosure of information. The Plaintiff stated that when the trustee required the Debtor to provide an accounting of business expenses the Debtor's response was incomplete. (Ex. 7, Amended Answers to Interrogatories ¶ 4.) The Plaintiff also stated that more information was requested of the Debtor and the Debtor refused to respond. (*Id.*) The Plaintiff does not specify what information the Debtor refused to turn over or who requested this additional information. Finally, the Plaintiff stated that the Debtor's voluntary disclosure was incomplete. (*Id.* ¶ 7.) The Plaintiff admitted, however, that the trustee did not request that the Debtor produce documents for the trustee. (7056-1 Statement ¶ 31.) Moreover, the Plaintiff admitted the documents the Debtor produced to the Plaintiff through discovery contained all the receipts the Debtor had concerning her business expenses. (7056-1 Statement ¶ 23; Ex. 6 ¶ 22.) As a result, the Debtor has refuted the Plaintiff's allegation that the Debtor withheld information concerning her business expenses. Therefore, the Court finds the Debtor did not violate § 727(a)(4)(D).

G.    **11 U.S.C. § 727(a)(5)**

Section 727(a)(5) bars a debtor's discharge for the failure to explain any dissipation of assets and provides in pertinent part that:

-29-

(a) The court shall grant the debtor a discharge, unless–

> (5) the debtor has failed to explain satisfactorily . . . any loss of assets or deficiency of assets to meet the debtor's liabilities[.]

11 U.S.C. § 727(a)(5). The inquiry under § 727(a)(5) is not limited to events or transactions that have occurred within a specified number of months or years before the bankruptcy filing. *Buzzelli*, 246 B.R. at 117. Thus, while § 727(a)(5) prescribes no limitations period, the assets in question must have belonged to the debtor at a time not remote in time to the commencement of the case. *Olbur*, 314 B.R. at 741. A focus on the two years prior to the bankruptcy filing is common. *See, e.g., Martin*, 698 F.2d at 886; *Baum v. Earl Millikin, Inc.*, 359 F.2d 811, 813 (7th Cir. 1966); *First Commercial Fin. Group, Inc. v. Hermanson (In re Hermanson)*, 273 B.R. 538, 552 (Bankr. N.D. Ill. 2002). Inquiries beyond the two-year period may be warranted. *See, e.g., In re D'Agnese*, 86 F.3d 732, 734 (7th Cir. 1996) (expanding the focus to nine years pre-petition). The exact time a court should look back depends on the case; there is no hard and fast rule. *Olbur*, 314 B.R. at 741.

"Section 727(a)(5) is broadly drawn and clearly gives a court broad power to decline to grant a discharge in bankruptcy where the debtor does not adequately explain a shortage, loss, or disappearance of assets." *Martin*, 698 F.2d at 886. "By penalizing a debtor who is insufficiently forthcoming about what happened to his assets, section 727(a)(5) is one of several Code provisions meant to relieve creditors and courts of the full burden of reconstructing the debtor's financial history and condition, placing it instead upon the debtor." *Olbur*, 314 B.R. at 740 (internal quotation omitted). Courts are not concerned with

-30-

the wisdom of a debtor's disposition of assets but, instead, focus on the truth, detail, and completeness of the debtor's explanation of the loss. *D'Agnese*, 86 F.3d at 735. A debtor "cannot abuse the bankruptcy process by obfuscating the true nature of his affairs and then refusing to provide a credible explanation." *Martin*, 698 F.2d at 888.

There are two stages of proof under § 727(a)(5). *Olbur*, 314 B.R. at 740; *Mantra*, 314 B.R. at 730; *Bostrom*, 286 B.R. at 364; *Banner Oil Co. v. Bryson (In re Bryson)*, 187 B.R. 939, 955 (Bankr. N.D. Ill. 1995). First, the party objecting to discharge has the burden of proving that the debtor at one time owned substantial and identifiable assets that are no longer available for his creditors. *Id.* Second, if the party objecting to the discharge meets that burden, then the debtor is obligated to provide a satisfactory explanation for the loss. *Id.*

What constitutes a "satisfactory" explanation for § 727(a)(5) purposes is left to the discretion of the court. *Baum*, 359 F.2d at 814; *Olson v. Potter (In re Potter)*, 88 B.R. 843, 849 (Bankr. N.D. Ill. 1988) (*citing Baum*). A debtor's explanation "must consist of more than the vague, indefinite, and uncorroborated hodgepodge of financial transactions. . . ." *Baum*, 359 F.2d at 814. "Instead it must be a good faith explanation of what really happened to the assets in question." *Potter*, 88 B.R. at 849. "To be satisfactory, the explanation must demonstrate the debtor has exhibited good faith in conducting his affairs and explaining the loss of assets." *Martin*, 141 B.R. at 999. Although the explanation does not necessarily need to be comprehensive, it must meet two criteria in order to be deemed "satisfactory." *Mantra*, 314 B.R. at 730; *Costello*, 299 B.R. at 901; *Bostrom*, 286 B.R. at 364; *Bryson*, 187 B.R. at 956. First, it must be supported by at least some documentation. *Id.* Second, this

-31-

documentation must be sufficient to eliminate the need for the court to speculate as to what happened to all the assets. *Id.*

Even though a satisfactory explanation must be convincing about the lack of concealment, the focus of the inquiry is not exclusively on the subjective nature or honesty of the debtor's explanation, but is also on the objective adequacy of such explanation. *See D'Agnese*, 86 F.3d at 735. Furthermore, a debtor's failure to satisfactorily justify a substantial loss of assets need not be the product of fraudulent intent. *Mantra*, 314 B.R. at 730. An objecting creditor must prevail on two issues, however: the disappearance of substantial assets and the lack of a satisfactory explanation for the disappearance. *Id.*; *Hermanson*, 273 B.R. at 546.

In this case, as to the first element, the Plaintiff alleges that the Debtor listed $30,800 of assets on her tax return that she did not list on her bankruptcy schedules. Nonetheless, the Debtor has provided a satisfactory explanation concerning these assets with the affidavit of her accountant, Neal Hopkins, as explained above. Thus, the Debtor has presented the Court with evidence to satisfactorily explain what appears to the Plaintiff to be a loss of assets. The Court finds the Debtor will not be denied a discharge under §727(a)(5).

### V. **CONCLUSION**

The Court holds that the Debtor has offered sufficient proof to negate an essential element of each statutory violation alleged in the Plaintiff's complaint. Thus, the Court

-32-

grants the Debtor's motion for summary judgment. The trial set to commence in this matter on December 17, 2007 is stricken.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

**ENTERED:**

DATE: _9/20/7_          _John H. Squires_
                        **John H. Squires**
                        **United States Bankruptcy Judge**

cc: See attached Service List

## SERVICE LIST

### Fiala v. Lindemann
### Adversary No. 06 A 01661

Andrea Hoeflich, Esq.
Law Office of Andrea Hoeflich
6900 S. Main Street
Suite 209
Downers Grove, IL 60516

Richard L. Hirsh, Esq.
Richard L. Hirsh & Associates PC
1500 Eisenhower Lane, Suite 800
Lisle, IL 60532-2135

David R. Brown, Esq.
Springer, Brown, Covey, Gaertner & Davis
400 S. County Farm Road, Suite 330
Wheaton, IL 60187

William T. Neary, United States Trustee
227 W. Monroe Street
Suite 3350
Chicago, IL 60606